IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| OSPREY FUNDING, LLC,, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-13-1172 |
| | § | |
| J3S ENTERPRISES, LLC, JONATHAN | § | |
| GRIFFIN, SR., and MARK LAZARUS, | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

The above referenced action arose out of two agreements representing factoring arrangements[1] between Plaintiff Osprey Funding, LLC ("Osprey"), a factoring company, and J3S Enterprises, LLC ("J3S"), pursuant to which Osprey purchased some accounts receivable from J3S for sums due or to become due to J3S, based on a different contract between subcontractor J3S and Facility Site Contractors, Inc. ("FASCON"),[2] which had been awarded a government

_____

[1] *Black's Law Dictionary* (6th ed. West 1990) defines "factoring" as follows: "Sale of accounts receivable of a firm [here J3S] to a factor [here Osprey] at a discounted price. The purchase of accounts receivable from a business by a factor who thereby assumes the risk of loss in return for some agreed discount." A "factor" is "[a] firm (typically a finance company) that purchases a firm's receivables at a discount and is responsible for processing and collecting the balances of the accounts." *Id. See also Wickipedia (*"Factoring is a financial transaction and a type of debtor finance in which a business [here J3S] sells its accounts receivable (i.e., invoices) to a third party (called a factor)[here, Osprey] at a discount.". Factoring may be employed to allow the business seller to meet its cash needs. *Id.*

[2] Copy of Nov. 1, 2012 Mobilization Funding Contract, attached to #26, Ex. A. After a dispute arose between FACSON and J3S, the contracting officer issued a cure notice to FACSON. FACSON failed to cure the breach, and the government terminated

contract for construction of improvements in military housing and an integrated warehouse facility for a United States Base at the Bagram Air Force Base in Afghanistan. Osprey alleged against J3S and Griffin claims for money had and received, fraud in the inducement, and enforcement of a written personal guaranty from Jonathan Griffin, Sr. ("Griffin"). This case was closed by a July 23, 2014 entry of final default judgment against Griffin and J3S and an August 22, 2013 dismissal without prejudice of Mark Lazarus ("Lazarus") (#19), who is in bankruptcy.

Now pending before the Court is Defendants J3S and Griffin's motion to vacate and dismiss (#26). Contained within this document are the following: (1) motion to vacate default judgment under Fed. R. Civ. P. 60(b) for lack of personal jurisdiction or insufficient service of process; (2) motion to dismiss under Rule 12(b)(5) for insufficient service of process; (3) motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2); (4) motion to dismiss for failure to join an indispensable party, FASCON, under Rules 12(b)(7) and 19(b); and (5) motion to dismiss for improper venue and forum selection clause under Rules 12(b)(3) and 19.

## Applicable Law

*Setting Aside a Default Judgment*

A district court may set aside an entry of default judgment

---

the contract with FACSON. As a result of FACSON's failure to perform, J3S was unable to perform its funding agreement with Osprey.

under Federal Rules of Civil Procedure 55(c) or 60(b) upon a showing of good cause. *Effjohn International Cruise Holdings, Inc. v. A&L Sales, Inc.*. 346 F.3d 552, 563 (5th Cir. 2003). Defaults are disfavored and "'where there are no intervening equities[,] any doubt should . . . be resolved in favor of the movant to the end of securing a trial upon the merits.'" *Id., quoting Lacy v. Site Corp.* 227 F.3d 290, 292 (5th Cir. 2000). Usually a party moving to set aside a default judgment must show that the outcome of the action may possibly differ if the case were tried, such as by demonstrating the existence of a meritorious defense which he had no opportunity to present. *Seven Elves, Inc. v. Oscines*, 635 F.2d 396, 403 (5th Cir. 1981).

Courts usually interpret "good cause" liberally and consider three nonexclusive factors in deciding if good cause *vel non* exists: "(1) whether the failure to act was willful; (2) whether setting the default aside would prejudice the adversary; and (3) whether a meritorious claim has been presented." *Id., citing id.* The court may also consider among other factors whether the party acted promptly and efficiently. *Id., citing Dierschke v. O'Cheskey (In re Dierschke)*, 975 F.2d 181, 184 (5th Cir. 1992).

"Willful" is used to consider the culpability of the defendant's actions. *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 64 (5th Cir. 1992). The Fifth Circuit has recommended that "willful" should be viewed in terms of the "justifiable neglect" or "excusable neglect" of Rule 60(b), a "less subjective"

standard. *Id.* ; *American Airlines v. Reinis*, 21 F.3d 1107, 1994 WL 171403, at *2 and n.10 (5th Cir. 1994)(Rule 60(b) requires a showing that defendants failed to file a timely answer because of excusable neglect and that they had a fair probability of success on the merits); *Willis v. Lopez*, Civ. A. No. 3:10-CV-154-M, 2010 WL 4877273, at *3 (N.D. Tex. Dec. 1, 2010)("When determining culpability, the Fifth Circuit instructs district courts to apply an 'excusable neglect' standard, which is satisfied if the movant's failure to respond is attributable to his own negligence, and not to gross carelessness, ignorance of the rules, or ignorance of the law. Neglect of a party's attorney may be treated as neglect of the party.") [3]. "Although a lack of notice might under some circumstances, constitute excusable neglect, there must be some evidence that a lack of notice actually occurred." *U.S. v. Thomas*, 2014 WL 7006001, at *3 (W.D. La. Dec. 8, 2012).

Lack of proper venue is not an adequate reason to set aside a default judgment. *Rogers v. Hartford Life and Acc. Ins. Co.*, 167

---

[3] The Fifth Circuit has opined about "excusable neglect":

> In determining whether a late filing was excusable neglect, the court should take into account the possible prejudice to the later filer, the length of the delay and the impact on judicial proceedings, the reason for delay, including especially if it was within the reasonable control of the movant, and whether the movant acted in good faith. Moreover, "the greater the negligence involved, or the more willful the conduct, the less 'excusable' it is."

*McKenzie v. Principi*, 83 Fed. Appx. 642, 644 (5th Cir. 2003)(citations omitted).

F.3d 933, 942 (5th Cir. 1999), *citing Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202 (10th Cir. 1986)("[I]f a party is in default by failing to appear . . . defects in venue are waived, and a default judgment may be validly entered and the judgment cannot be attacked collaterally for improper venue."), and 15 Charles A. Wright *et al.*, *Federal Practice and Procedure: Jurisdiction* § 3829 (2d ed. 1986)("Venue is waived by a defendant who defaults."); *Action Tapes, Inc. v. Ebert*, No. Civ. A. 3:05CV1239, 2006 WL 305769, *1 n.2 ("improper venue is not sufficient to render a default judgment void").

Federal Rule of Civil Procedure 60(b)(4) allows a court to relieve a party from a final judgment if the judgment is void. Rule 60(b)(4) applies only when the judgment is based on a "jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *United Student Aid funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010).

"If a court lacks jurisdiction over the parties because of insufficient service of process, the judgment is void and the district court must set it aside." *Carimi v. Royal Carribean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992). A valid service of process gives a defendant notice that failure to file an answer to the complaint puts him at risk of default judgment. Fed. R. Civ. P. 12(a)(1) and 55(a); *SUA Ins. Co. v. Buras*, 421 Fed. Appx. 384, 385 (5th Cir. Apr. 6, 2011). Rule 4(e)(1) provides in relevant part for service of process on a  an individual within a

judicial district of the United States, "Unless federal law provides otherwise, an individual--other than a minor, an incompetent person, or a person whose waiver has been filed--may be served in a judicial district of the United Sates by: (1) following the state law for serving a summons in an action brought in the courts of general jurisdiction in the state where the district court is located or where service is made . . . ."

Section 17.044(b) of the Texas Civil Practice & Remedies Code permits substituted service on the Secretary of State for non-resident defendants doing business in Texas who do not maintain a regular place of business in Texas, provided that the relevant proceeding arises out of business done in Texas and the nonresident is a party to the suit.  Texas Civil Practice & Remedies Code § 17.042 provides,

> In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident:
>
> (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;
>
> (2) commits a tort in whole or in part in this state; or
>
> (3) recruits Texas residents, directly or through an intermediary located in this state for employment inside or outside this state.

Furthermore, the plaintiff must strictly comply with the notice requirements of § 17.045(a):  "If the secretary of state is served with duplicate copies of process for a nonresident, the documents shall contain a statement of the name and address of the

nonresident's home or home office . . . ." *Savariego v. Melman*, No. 3:01-CV-1951-M, 2001 WL 1543857, at *1 (N.D. Tex. Dec. 3, 2001).

*Personal Jurisdiction*

When a defendant files a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant. *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006), *citing Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982).[4] At the pretrial stage of litigation, if the district court does not conduct a hearing on personal jurisdiction, the plaintiff need only present a prima facie case of personal jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.), *cert. denied*, 513 U.S. 930 (1994); *Felch v. Transportes Lar-Mex S.A. DE CV,* 92 F.3d 320, 325 (5th Cir. 1996); *Johnston v. Multidata Systems Intern. Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). Proof by preponderance of the evidence is not

---

[4] "Absent any dispute as to the relevant facts, the issue of whether personal jurisdiction may be exercised over a nonresident defendant is a question of law . . . ." *Ruston Gas Turbines, Inc. v. Donaldson Co.,* 9 F.3d 415, 418 (5th Cir. 1993). Where the facts are disputed, the party seeking to invoke the court's jurisdiction bears the burden of establishing sufficient contacts with the forum state by the nonresident defendant to invoke the court's jurisdiction. *Bullion v. Gillespie*, 895 F.2d 213, 216-17 (5th Cir. 1990).

required.  *Johnston*, 523 F.3d at 609.[5]  When a defendant disputes

factual bases for personal jurisdiction, the district court may

consider the record before it, including "affidavits,

interrogatories, depositions, oral testimony, or any combination of

the recognized methods of discovery." *Quick Technologies, Inc. v.*

---

[5] As the Fifth Circuit explained in *Walk Haydel &*
*Associates, Inc. v. Coastal Power Production Co.*, 517 F.3d 235,
241-42 (5th Cir. 2008),

> Ultimately, the plaintiff must show by a preponderance
> of the evidence that jurisdiction is proper.  Often,
> the determination of whether this standard is met is
> resolved at trial along with the merits.  This is
> especially likely when the jurisdiction issue is
> intertwined with the merits and therefore can be
> determined based on jury fact findings.  In this
> situation it is often "preferable that [the
> jurisdictional] determination be made at trial, where a
> plaintiff may present his case in a coherent, orderly
> fashion and without the risk of prejudicing his case on
> the merits."  But this court has said that after a
> pretrial evidentiary hearing confined to the
> jurisdictional issue, where both sides have the
> opportunity to present their cases fully, the district
> court can decide whether the plaintiff has established
> jurisdiction by a preponderance of the evidence.
> [footnotes omitted]

The panel further opined, *id.* at 241.

> If the court determines that it will receive only
> affidavits or affidavits plus discovery materials,
> these very limitations dictate that a plaintiff must
> make only a prima facie showing of jurisdictional facts
> through the submitted materials in order to avoid a
> defendant's motion to dismiss.  Any greater burden such
> as proof by a preponderance of the evidence would
> permit a defendant to obtain a dismissal simply by
> controverting the facts established by a plaintiff
> through his own affidavit and supporting materials.

*Sage Group PLC*, 313 F.3d 338, 344 (5th Cir. 2002)(*quoting Thompson v. Chrysler Motors Corp.*, 755 F.3d 1162, 1165 (5th Cir. 1985)), *cert. denied*, 540 U.S. 814 (2003); *Kelly Law Firm, P.C. v. An Attorney for You*, 679 F. Supp. 2d 755, 762 (S.D. Tex. 2009). The court has discretion as to the type and amount of discovery it will allow, but unless there is a full and fair hearing, it should not act as a factfinder and must construe all disputed facts in favor of the plaintiff. *Walk Haydel*, 517 F.3d at 241. On a motion to dismiss under Rule 12(b)(2), uncontroverted allegations in plaintiff's complaint are taken as true, and conflicts between facts in the parties' affidavits must be resolved in plaintiff's favor for purposes of the *prima facie* case of personal jurisdiction. *Johnston*, 523 F.3d at 609; *Kelly Law Firm*, 679 F. Supp. 2d at 762; *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). Nevertheless, the court is not required to credit conclusory allegations even if they are uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

Under Rule 12(b)(2) a party may move to dismiss for lack of personal jurisdiction. The court must find that it has personal jurisdiction over that defendant before it makes any decision on the merits. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007); *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 623, n.2 (5th Cir. 1999)("Personal jurisdiction is an essential element of the jurisdiction of a district court, without which it

is powerless to proceed to an adjudication.").

Under the federal rules, except where a federal statute provides for broader personal jurisdiction, the district court's personal jurisdiction is coterminous with that of a court of general jurisdiction of the state in which the district court sits. *Submersible Sys., Inc. v. Perforadora Cent.*, *S.A. de C.V.*, 249 F.3d 413, 418 (5th Cir. 2001). A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if the forum state's long-arm statute confers personal jurisdiction over that nonresident defendant and if the exercise of personal jurisdiction satisfies due process under the United States Constitution. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009), *citing Moncrief Oil Int'l, Inc. v. OAO Gasprom*, 481 F.3d 309, 311 (5th Cir. 2007). The Texas long-arm statute, Texas Civil Practice and Remedies Code §§ 17.0421-.045, extends jurisdiction to the limits of the federal due process. *Schlobohm v. Schapiro*, 784 S.W. 2d 355, 357 (Tex. 1990); *Gonzalez v. Bank of America Ins. Servs., Inc.*, No. 11-20174, 2011 WL 6156856, at *3 (5th Cir. Dec. 12, 2011), *citing Stroman Realty, Inc. v. Antt*, 528 F.3d 382, 385 (5th Cir. 2008). Thus a plaintiff in a diversity action in federal court in Texas[6] need only demonstrate that (1) the defendant

---

[6] *See Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)("Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis.").

purposely availed himself of the benefits and protections of the forum state by establishing that the defendant had minimum contacts with the forum state, and (2) the exercise of personal jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Alpine View Co., Ltd. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000); *Moncrief Oil Int'l, Inc. v. OAO Gasprom*, 481 F.3d 309, 311 (5th Cir. 2007).

The mere fact that a party contracted with a resident of Texas is insufficient to establish minimum contacts necessary to support personal jurisdiction. *Moncrief Oil Int'l, Inc. v. OAO Gasprom*, 481 F.3d 309, 311 (5th Cir. 2007)("Merely contracting with a resident of the forum state does not establish minimum contacts."); *Cardinal Health Solutions, Inc. v. St. Joseph Hosp. of Port Charlotte, Fla. Inc.*, 314 Fed. Appx. 744, 745 (5th Cir. 2009). Nor does the exchange of communications in the developing and performing of a contract constitute purposeful availment of the benefits and protections of the laws of Texas. *Id.; id.; Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 344 (5th Cir. 2004). "[Purchases and related trips, standing alone, are not a sufficient basis for a State's assertion of jurisdiction." *Helicopteros*, 466 U.S. at 417. Moreover jurisdiction may not be based on the fortuity of one party residing in the forum state. *McFadin*, 587 F.3d at 760. Mere

foreseeability, by itself, does not create personal jurisdiction. *Moncrief Oil*, 481 F.3d at 313.

A choice of law provision may be a relevant factor for determining purposeful activity directed toward the forum state, but is not necessarily determinative, and standing alone, it is insufficient to confer jurisdiction. *Santander Consumer USA, Inc. v. Shults Ford, Inc.*, 2011 WL 2601520, at *4 (N.D. Tex. June 30, 2011), *citing Petty-Ray Geophysical*, 954 F.2d at 1069, and *Burger King*, 471 U.S. at 482. The court must examine the quality and nature of the defendant's activities in the forum in their totality to decide whether the defendant purposely availed itself of the privileges offered by the forum state. *Id., citing Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999).

Personal jurisdiction can be waived by an enforceable forum selection clause in which the parties consent to personal jurisdiction in a specified forum. *Burger King*, 471 U.S. at 473 n.14. Federal law governs the enforceability of forum selection and choice of law clauses. *Haynesworth v. The Corporation*, 121 F.3d 956, 962 (5th Cir. 1997), *citing M/S Bremen v. Zapata Off-shore Co.*, 407 U.S. 1 (1972), and *Scherck v. Alberto-Culver Co.*, 417 U.S. 506, 518-21 (1974). Forum selection clauses are presumed to be valid. *M/S Bremen v. Zapata Off-shore Co.*, 407 U.S. at 9; *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528,

537-38 (1995). A party seeking to bar enforcement of a forum selection clauses bears a heavy burden of demonstrating that the clause is unreasonable under the circumstances, i.e., "that the clause results from fraud or overreaching, that it violates a strong public policy, or that the enforcement of the clause deprives the plaintiff of his day in court.". *Bremen*, 407 U.S. at 12-13, 15, 18; *Mitsui & Co. (USA), Inc. v. MIRA M/V*, 111 F.3d 33, 35 (5th Cir. 1997).

*Required Joinder of Parties*

"The federal rules seek to bring all persons who may have an interest in the subject of an action together in one forum so that the lawsuit can be fairly and completely disposed of." *Pulitzer-Polster v. Pulitzer*, 784 F. 2d 1305, 1308 (5th Cir. 1986), citing Fed. R. Civ. P. 19 advisory committee note). Federal Rule of Civil Procedure 19 ("Required Joinder of Parties") provides in relevant part,

(a) **Persons Required to Be Joined if Feasible**
    **(1)** *Required Party.* A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
        (A) in that person's absence, the court cannot accord complete relief among existing parties; or
        (B) that person claims an interest relating to the subject matter of the action and is so situated that disposing of the action in the person's absence may:
            (i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligation because of the interest.

(2) ***Joinder by Court Order.*** If a person has not been joined as required, the court must order that the person be made a party. A person who refused to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

(3) ***Venue.*** If a joined party objects to venue and the joinder would make venue improper, the court must dismiss that party.

**(b)** **When Joinder Is Not Feasible.** If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by:

(A) protective provisions in the judgment;

(B) shaping the relief; or

(C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder.[7]

---

[7] In *Schutten v. Shell Oil Company*, 421 F.2d 869, 873 (5th Cir. 1970), the Fifth Circuit opined regarding these four interests,

The distilled essence of these "criteria" of subdivision (b) is an attempt to balance the rights of all concerned. The plaintiff has the right to "control" his own litigation and to choose his own forum. This "right" is, however, like all other rights, "defined" by the rights of others. Thus the defendant has the right to be safe from needless multiple litigation and from incurring avoidable inconsistent obligations. Likewise the interests of

(c) **Pleading the Reasons for Nonjoinder.** When asserting
a claim for relief, a party must state:
> (1) the name, if known, of any person who is
> required to be joined if feasible but is not
> joined; and
> (2) the reasons for not joining that person.

An analysis under Rule 19(a) first requires the court to
decide whether a person should be joined to the action. If the
person is required to be joined but has not been, the court must
order that person to be made a party. Fed. R. Civ. P. 19(a)(2).

If the person should be joined but cannot feasibly be joined,
the court can consider the four factors under Rule 19(b) and decide
whether "in equity and good conscience the action should proceed
among the existing parties or be dismissed." Rule 19(b). "'A
district court may refuse to proceed with the action if prejudice
would result to either the absent party or to parties already
joined.'" *Helia Tec Resources, Inc. v. GE & F Co., Ltd.*, Civ. A.
No. H-09-1482, 2011 WL 4383085, at *3 (S.D. Tex. Sept. 20, 2011),
*quoting Doty v. St. Mary Parish Land Corp.*, 598 F.2d 885, 887 (5th
Cir. 1979). If joinder would destroy the court's subject matter

---

the outside who cannot be joined must be considered.
Finally there is the public interests and the interest
the court has in seeing that insofar as possible the
litigation will be both effective and expeditious.

*Id., citing Provident Bank & Trust C. v. Patterson*,390 U.S. 102,
106-107 (1967).

jurisdiction,[8] under Rule 19(b) the court must decide whether to go forward with the litigation without that party or to dismiss the action. *HS Resources, Inc. v. Wingate*, 327 F.3d 432, 439 (5th Cir. 2003). "'The possibility of multiple litigation alone will not make a party indispensable, but the threat of inconsistent obligations will.'" *Id., quoting Cornhill Ins. PLC v. Valsamis, Inc.*, 106 F.3d 80, 84 (5th Cir. 1988). The party seeking joinder of another person initially has the burden of demonstrating that the missing party is required and the nature of the unprotected interests of that absent party, but after "'an initial appraisal of the facts indicates that a possibly necessary party is absent, the burden of disputing this initial appraisal falls on the party who opposes joinder.'" *Hood ex rel. Mississippi v. City of Memphis, Tenn.*, 570 F.3d 625, 628 (5th Cir. 2009), *quoting Pulitzer-Polster*, 784 F.2d at 1309; *HS Resources*, 327 F.3d at 439.

*Merger and Modification of a Contract*

"'A merger occurs when the same parties to an earlier agreement later enter into a written integrated agreement covering the same subject matter.'" *Westergren v. Nat'l Property Holdings, LP*, 409 S.W. 3d 110, 131 (Tex. App.--Houston [14th Dist.] 2013, pet.

---

[8] This case is predicated on diversity jurisdiction: Osprey is a Texas limited liability company with its principal place of business in Harris County, Texas; J3S is a Georgia limited liability company; Griffin is a resident of Georgia; and alleged indispensable party FASCON is purportedly a citizen of Maryland.

filed Oct. 4, 2013), *quoting Superior Laminate & Supply, Inc. v. Formica Corp.*, 93 S.W. 3d 445, 448-49 (Tex. App.--Houston [14th Dist.] 2002, pet. denied). "A 'merger clause' is a contractual provision mandating that the written terms of the contract may not be varied by prior agreements, because all such agreements have been merged in the new document." *Id.* at 130-31, *citing IKON Office Solutions, Inc. v. Eifert*, 125 S.W. 3d 113, 125 & n.6 (Tex. App.--Houston [14th Dist.] 2003, pet. denied)(concluding statements that document "constitutes the entire agreement concerning the subject matter hereof" and "supercedes prior . . . agreements" were merger clauses.). "Recitations to the effect that a written contract is integrated, that all conditions, promises, or representations are contained in the writing . . . are commonly known as merger or integration clauses." 11 Samuel Williston and Richard A. Lord, *A Treatise on the Law of Contracts* § 33.21 (4th ed. 1999). Furthermore, where a merger clause clearly expresses the parties' intent to waive fraudulent inducement claims or disclaims reliance on representations, it may bar claims of fraudulent inducement. *Dunbar Medical Systems, Inc. v. Gammex Inc.*, 216 F.3d 441, 449 (5th Cir. 2000)(where a contract is created in conditions such as that the parties are represented by counsel, are knowledgeable about/experienced in negotiation, and bargaining at arm's length, a merger clause may limit any challenge to the contract's validity on fraudulent inducement grounds), *citing*

*Schlumberger Tech. Corp. v. Swanson*, 959 S.W. 2d 171, 179-80 (Tex. 1997). *See also Forest Oil Corp. v. McAllen*, 268 S.W. 3d 51, 60 (Tex. 2008).

Under Texas law, a party to a contract may enter into a subsequent agreement regarding the subject matter of the first contract. *Fish v. Tandy Corp.*, 948 S.W. 2d 886, 898 (Tex. App.-- Fort Worth 1997, writ denied)(merger doctrine applies when same parties to an earlier agreement intend to and enter into a later written integrated agreement covering the same subject matter with terms so inconsistent with the first that both cannot stand; courts conclusively presume that the first agreement is superseded by the second). The two agreements will be considered together, but to the extent that they conflict, the terms of the later agreement will control. *Saturn Capital Corp. v. Dorsey*, No. 01-04-00626-CV, 2006 WL 1767602, at *4 (Tex. App.--Houston [1st Dist.] 2006, rev. denied), *citing IP Petroleum Co. v. Wevanco Energy, LLC*, 116 S.W. 3d 888, 899 (Tex. App.--Houston [1st Dist.] 2003, pet. denied).

A "modification" of a contract is a change in the original agreement that inserts new or different elements into the details of the contract, but leaves its general purpose and effect the same. *Enserch Corp. v. Rebich*, 925 S.W. 2d 75 (Tex. App.-Tyler 1996, writ dism'd by agreement), *cited for that proposition, Omni USA, Inc. v. Parker Hannifin Corp.*, 798 F. supp. 831, 849 (S.D. Tex. 2011). *See also BACM 2001-1 San Felipe Rd. Ltd. P'ship v.*

*Trafalgar Holdings I, Ltd.*, 218 S.W. 3d 137, 146 (Tex. App.--
Houston [14th Dist.] 2007, pet. denied)("A modification alters only
those terms of the original agreement to which it refers, leaving
intact those unmentioned portions of the original agreement that
are not inconsistent with the modification.").  In *Hathaway v. Gen.
Mills, Inc.*, 711 S.W. 2d 227, 228-29 (Tex. 1986), the Texas Supreme
Court wrote,

> Parties have the power to modify their contracts.  A
> modification must satisfied by elements of a contract:
> a meeting of the minds supported by consideration.
> Whether a contract is modified depends on the parties'
> intentions and is a question of fact.  The burden of
> proving modification rests on the party asserting
> modification.

*Id., quoted by Omni USA*, 798 F. Supp. 2d at 849. The party
asserting modification of a contract must show (1) notice of the
change and (2) acceptance of the change. *Omni USA*, 798 F. Supp. 2d
at 849, *citing Price Pfister, Inc. v. Moore & Kimmey, Inc.*, 48 S.W.
3d 341, 349-50 (Tex. App.--Houston [14th Dist.] 2001, pet. denied).
A valid modification may be based on new consideration and the same
degree of mutuality as existed for the original contract and all
parties must consent to the modification.  *Id., citing Hill v.
Heritage Resources, Inc.*, 964  S.W. 2d 89, 113-14 (Tex. App.--El
Paso 1997, writ denied), and *S&D Group, Inc. v. Talamas*, 710 S.W.
2d 680, 683 (Tex. App.--Corpus Christi 1986)(A contract that is
modified by mutual consent constitutes a new agreement and takes
the place of the original)(and cases cited therein).  Under the

Texas UCC, Tex. Bus. & Com. Code § 2.209(a), "An agreement modifying a contract within this chapter needs no consideration to be binding." "Even if there is no evidence of other valuable consideration for the modification, the continuing mutual obligations by the parties may furnish sufficient consideration to support a binding modified contract." *Enserch Corp.*, 925 S.W. 2d at 83. One party by itself cannot modify a contract after it has been entered into, but rather all parties to an agreement must consent to the modification for the modification to be valid. *Hovas v. O'Brien*, 654 S.W. 2d 801, 803 (Tex. App.--Houston [14th Dist.] 1983, writ ref'd); *Mid Plains Reeves, Inc. v. Farmland Indus., Inc.*, 768 S.W. 2d 318, 321 (Tex. App.--El Paso 1989, writ denied); *Mandril v. Kasishke*, 620 S.W. 2d 238, 244 (Tex. Civ. App.--Amarillo 1981, writ ref'd n.r.e.).

### Defendants' Motion to Vacate and Dismiss (#26)

Defendants Griffin and J3S assert that they were not properly served in strict compliance with summons as required by Rule 4(e) and (h)[9] and the Texas long-arm statute. First they contend that

---

[9] Rule 4(h) addresses in relevant part service on a corporation where a waiver has not been filed and requires

(1) in a judicial district of the United States:

(A) in a manner prescribed by Rule 4(e)(1) for serving an individual; or

(B) by delivering a copy of the summons of the complaint to an officer, a managing or general

providing the Secretary of State with the "last known address" of the defendant does not comply with Texas Civil Practice & Remedies Code § 17.045(a) requirement of the "name and address of the home or home office of the nonresident." Osprey directed service upon Griffin to "his place of business." The petition states that service of process should be forwarded to his "last known address." J3S's home office is not located at 3100 Gentian Boulevard (Ex. B), the address to which the Secretary of State certified it forwarded the copy of the citation and original petition. Moreover, the Secretary of State received return receipts. Instrument #7 (return of summons executed as to J3S), #8 (return of summons executed as to Griffin). *World Distribs. v. Knox*, 968 S.W. 2d 474, 477 (Tex. App.--El Paso 1998)(holding that service of process under the long-arm statute, § 17.045, was defective because the petition did not allege, and nothing in the record established, that the address provided was defendant's home or home office address and reversing default).[10] Because Plaintiff failed to strictly comply with the

---

agent, or any other agent authorized by appointment or by law to receive service of process and--if the agent is one authorized by statute and the statute so requires-by also mailing a copy of each to the defendant.

[10] *See Wachovia Bank of Delaware, N.A. v. Gilliam*, 215 S.W. 3d 848, 849-50 (Tex. 2007)(*citing World Distrib.*, 968 S.W. 2d at 477-78, and opining, "If nothing on the face of the record shows the forwarding address was the defendant's "home or home office," the court of appeals are unanimous that a default judgment cannot survive a restricted appeal")(in a restricted appeal from a

long-arm statute, service on Defendants is defective and the default judgment is void or, alternatively, should be vacated.

Defendants further urge that under Rule 12(b)(5), because no proper service of process occurred pursuant to Rule 4(m)(service must be made on a defendant within 120 days after the complaint is filed), the Court lacks personal jurisdiction over J3S and Griffin. Osprey did not serve these defendants properly under Rules 4(e)(1)(serving individual following law of state in state where district court is located or where service is made) or 4(h)(1)(serving corporation as under Rule 4(e)(1) or delivering or mailing a copy of summons and complaint to an authorized agent) and the Texas long-arm statute), so service should be quashed, the default judgment should be vacated, and Defendants should be dismissed under Rules 12(b)(5) and 12(b)(2).

In addition, Defendants maintain that the agreement from which the dispute arose contains an irrevocable provision that appoints the Secretary of the State of Delaware as the Defendants' agent, drafted by Osprey and consented to by Defendants. Therefore Osprey must serve Defendants through the Secretary of State of Delaware and bring any action in Delaware. Therefore this Court lacks jurisdiction over J3S and Griffin. Despite their delay after issuance of the default judgment in making this motion due to

---

default judgment, no presumptions are made in favor of valid service).

"financial obstacles," Defendants insist they have the right to challenge it, at all times having attempted to settle the suit with Osprey.

Furthermore J3S and Griffin contend that FASCON, a Maryland corporation, is an indispensable party, but is not subject to the jurisdiction of this Court.[11] Under Rule 12(b)(7), the Court may dismiss this action for failure to join a required party under Rule 19. *See HS Resources, Inc.*, 327 F.3d at 438 ("Rule 19 provides for the joinder of all parties whose presence in a lawsuit is required for the fair and complete resolution of the dispute at issue. It further provides for the dismissal of litigation that should not proceed in the absence of parties that cannot be joined."). The court must initially decide under Rule 19(a) if the person should be joined. If so, and if joinder would destroy the court's jurisdiction, the court must decide under Rule 19(b) if the party is indispensable under the four identified factors: (1) the extent to which proceeding without the required party would prejudice either the absent party or the parties to the suit; (2) whether a judgment can be structured with protective provisions which would lessen the potential prejudice; (3) whether a judgment in the

---

[11] The Administrative Committee's note explains that the word "indispensable" is used "only in the conclusory sense, that is, a person is 'regarded as indispensable' when he cannot be made a party, and upon consideration of the factors above mentioned, it is determined that in his absence it would be preferable to dismiss the action, rather than retain it."

absence of the necessary party will be adequate; and (4) whether the plaintiff has a adequate remedy if the lawsuit is dismissed. *HS Res.*, 327 F.2d at 431. If the party is indispensable, the court must dismiss the litigation; if not, the court may proceed with the case.

Therefore the court must decide whether the court should proceed without FASCON by considering the four interests, i.e., whether FASCON is indispensable. J3S argues that the judgment rendered in FASCON's absence has prejudiced its ability to proceed against FASCON for invoices owed to J3S. Because J3S signed over its right to payment to Osprey, J3S can not proceed against FASCON in arbitration. Osprey concedes that FASCON is the source of funds to satisfy the agreements between Osprey and J3S and it retains an interest in the invoices at issue. Therefore Osprey can collect from both J3S and FASCON, individually, and obtain two judgments from both companies, while leaving J3S exposed to judgment from both FASCON and Osprey. Thus insist Defendants, fairness and justice require that FASCON be joined.

As for the forum-selection clause in the agreement signed by the parties selecting the State of Delaware to be the forum state, Osprey has brought suit in Texas in direct contradiction to that written agreement, an additional reason for the Court to dismiss this action.

### Osprey's Response (#27)

Osprey's Response asserts and provides evidence that most of Defendants' allegations are not true.

"On a motion to vacate a default judgment based on improper service of process where the defaulting defendant had actual notice of the original proceeding but delayed in bringing the motion, the defendant bears the burden of proof to establish that the purported service did not occur." *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 299 (2d Cir. 2005). Furthermore, parties may modify a contract by adding to or altering its provisions. *Morgan v. Stower*, 511 S.W. 2d 362, 365 (Tex. Civ. App.--Eastland 1974, writ ref'd n.r.e.). "A modification to a contract creates a new contract that includes the new, modified provisions and the unchanged old provisions." *Boudreaux Civic Ass'n v. Cox*, 882 S.W. 2d 543, 547-48 (Tex. Civ. App.--Houston [1st Dist.] 1994, no writ).

In the parties' second, December 13, 2012 contract, the parties modified the venue and jurisdiction from Delaware to Texas.

This second agreement, Ex. 1 at p. 12, states the following:

[¶ 13](e) . . . Contractor hereby waives personal service of any summons, complaint, or other process, and agrees that service thereof may be made by registered or certified mail directed to Contractor at Contractor's address set forth above or such other address of which Contractor shall have previously notified Factor by registered or certified mail. . . .

[¶ 13](i) The undersigned hereby appoints the Secretary of the State of Texas as his/her/their agent to effectuate service of process. Said Appointment is irrevocable.

The first page of the December 13, 2012 contract lists the address of J3S as 3100 Gentian Blvd., Columbus, Georgia 31907, the precise address where the summons and complaint were sent to J3S.[12] Griffin's Affidavit (#26, Ex. B) under oath states that he does not reside at this address and that J3S moved to an undisclosed address in November 2012; but it also states that he signed the affidavit at 3100 Gentian Blvd. One of the two statements, made under penalty of perjury, is not true. Griffin also admitted owing the money that is the focus of this lawsuit. Email from Griffin to John Morris, dated June 13, 2013, Ex. 2, ¶¶ 3-5. Osprey also shows in Exhibit 1 that it advanced its last payment of $150,000.00 to J3S on December 13, 2012 to be used to pay salaries to employees for the months of December 2012 and January 2013, but as evidenced by the bankruptcy filings of J3S,[13] the salaries were not paid and are listed as priority claims. Bankruptcy Schedules of J3S, Schedule E, Exhibit 3. Maintaining that J3S and Griffin were aware of the default judgment at or near the time it was entered but did nothing, Osprey issued a post-default-judgment notice of

---

[12] Osprey notes that while Griffin admits that he received the summons and complaint on J3S, a deposition is necessary to ascertain whether he received the summons and complaint addressed to him at the same address. Griffin, however, has failed to appear for deposition on numerous occasions, as evidenced by Judge Stacy's order granting Osprey's motion for sanctions (#33).

[13] The bankruptcy was filed in the Middle District of Georgia, case number 14-40067.

deposition in Georgia to Griffin and his wife, but they failed to appear (Ex. 4). The United States District Judge in the Middle District of Georgia, the Honorable Clay D. Land, ordered them to appear for deposition on January 27, 2012, but Defendants filed their bankruptcy in that district to avoid the order. Ex. 5. After Griffin's Chapter 13 trustee objected to confirmation of Griffin's plan based on a number of deficiencies, including failure to make payments, failure to disclose property, and lack of good faith (Ex. 8), the bankruptcy court dismissed the bankruptcy, and Defendants then filed their motion to vacate the default judgment here, and Osprey again noticed their depositions, this time for May 7, 2014. As shown in United States Magistrate Judge Frances Stacy's order (#33) denying Osprey's motion to strike Defendants' pleadings for failure to appear for deposition, but granting Osprey's motion for sanctions, yet they still failed to appear.

As for Griffin's affidavit averring that 3100 Gentian Blvd. was not the home office of J3S at the time the complaint was filed, Osprey points out that under Georgia law Georgia corporations must continuously maintain "[a] registered office that may be the same as any of its places of business." Ga. Code Ann. § 14-2-501(1). Throughout its existence, J3S filed three documents with the Georgia Secretary of State: a certificate of organization (Ex. 11), an Annual Registration showing its address as 3100 Gentian Blvd. on June 7, 2012 (Ex. 12), and an Annual Registration on April

7, 2014 (eight days before filing its motion to dismiss) showing it changed its address to 5820 Veterans Pkwy., Suite 304, Columbus, GA 31904 (Ex. 13). Thus 3100 Gentian Blvd. was the address on file with the Georgia Secretary of State when Osprey served J3S on May 20, 2013.

Defendants' argument that the Court lacks personal jurisdiction over them is based solely on their statement that they consented to the Delaware Secretary of State's being their agent for service of process and Delaware the venue for disputes. They fail to mention the second, subsequent agreement in which they agreed that Texas has jurisdiction and the venue is proper in Harris County, Texas. Ex. 1, ¶ 13(e). Defendants also assert that venue is improper based on a forum selection clause in the first contract, but ignore the fact that the December contract provided suit in Texas and for exclusive venue in Harris County.

Osprey also argues that FASCON is not an indispensable party. J3S does not have the right to collect the invoices from FASCON because it sold that right to Osprey, so J3S cannot claim it has been prejudiced by its own decision to sell the invoices. Although J3S and Griffin argue that "fairness and justice" require joinder of FASCON, they ignore the UCC. The rights of a secured creditor are cumulative. Del. Code Ann. tit. 6, § 9-601(c); Tex. Bus. & Com. Code Ann. § 9.601(c). A factor may pursue its rights simultaneously or in whatever order it chooses. *Reading Co-op.*

*Bank v. Suffolk Constr. Co.*, 464 Mass. 543, 555, 984 N.E. 2d 776, 785 (2013).

**Court's Decision**

The threshold issue here is whether the December 13, 2012 agreement (#27, Ex. 1) is a valid modification of the November 1, 2012 agreement (#26, Ex. A) and/or a merger of it and the December agreement between Osprey ("Factor") and J3S ("Contractor"). The opening paragraph of the December agreement states clearly and unambiguously,

> This Agreement is in furtherance of, and not in novation of, that one certain Factoring Agreement by and between Contractor and Factor dated November 1, 2012 (the Prior Agreement) which governs the terms and conditions of the purchase and sale of Invoice #1 for the Project (defined below). This Agreement governs the terms and conditions of the purchase and sale of Invoice #2 (in the Net Invoice Amount of $744,033.60 after retainage) for the Project (hereinafter referred to as the "Receivable") and does not supersede the Prior Agreement.

Thus the second agreement supplements the November 2012 agreement and governs an additional and possible future invoices while continuing to cover the first. It provides new consideration for Invoice #2 (see ¶ 4, "Purchasing Price" and ¶ 5, "Factor Funding Fee").

Furthermore Paragraph 13(e) recites in relevant part,

> This agreement is deemed made in the State of Texas and shall be governed, interpreted, and construed in accordance with the laws of the State of Texas without regard to the conflict of laws principles. . . . . FACTOR AND CONTRACTOR HEREBY CONSENT TO THE JURISDICTION OF THE COURTS OF THE STATE OF TEXAS AND OF ANY FEDERAL COURT IN

SUCH STATE FOR DETERMINATION OF ANY DISPUTE AS TO ANY SUCH MATTER AND VENUE SHALL BE EXCLUSIVELY IN HARRIS COUNTY, TEXAS. In connection therewith, Contractor hereby waives personal service of any summons, complaint, or other process, and agrees that service thereof may be made by registered or certified mail directed to Contractor at Contractor's address set forth above or such other address of which Contractor shall have previously notified Factor by registered or certified mail.

Paragraph 13(g), a merger clause, provides,

This agreement is the parties' complete and final agreement, reflects the parties' mutual understanding, supersedes any prior agreement or understanding between the parties, and may not be modified or amended orally. Contractor acknowledges that, but for the promises and representations expressly contained in this Agreement, no other promise or representation of any kind has been made to Contractor to induce Contractor to execute this Agreement. Furthermore, Contractor acknowledges that if any such promise or representation has been made, Contractor has not relied upon it in deciding to enter into this Agreement, which has been jointly negotiated and drafted.

The clause clearly merges the two agreements.

Finally, ¶ 13(i) states, "The undersigned hereby appoints the Secretary of State of the State of Texas as his/her/their agent to effectuate services of process. Said appointment is irrevocable." The Agreement is signed by the managing Member of Osprey, John H. Morris, III, and "acknowledged, accepted, and agreed to," and signed by, Griffin as President and CEO of J3S on behalf of J3S. The signatures evidence both parties' meeting of the minds over the agreement. The December agreement supersedes the conflicting forum selection clause of the November agreement.

Texas courts have recognized the right of contracting parties to create contractual provisions that disclaim any reliance on prior contractual representations or promises. *Schlumberger Technology Corp. v. Swanson*, 959 S.W. 2d 171, 179-80 (Tex. 1997). "Texas courts and the Fifth Circuit have enforced merger clauses where the contract and the circumstances of its formation evince a clear and specific intent to disclaim reliance on prior representations." *LeTournea Tech. Drilling Sys., Inc. v. Nomac Drilling LLC*, 676 F. Supp. 2d 534, 544 (S.D. Tex. 2009).

The December 2012 agreement on its face is clear and unambiguous, contains a merger clause merging and integrating it with the November 2012 agreement. Furthermore, Griffin and J3S have not challenged its existence nor its and its provisions' validity or import. Nor have Defendants responded to Osprey's contentions and evidence that their motion was knowingly deceptive.

Accordingly, the Court

ORDERS the following:

J3s and Griffin's motion to vacate default judgment is DENIED because they lacked a meritorious defense and they have failed to show good cause, i.e., that the outcome of this case would have been different had the case proceeded to trial. Osprey would be prejudiced in money and time were it forced to prosecute a trial where Defendants had no viable defense.

Defendants' motion to vacate for lack of personal jurisdiction

and insufficient service of process is also DENIED. Osprey has shown that service of process was in accord with ¶ 13(i) of the December 2012 agreement, as well as the address to which process was sent, which was also that filed by J3S with the Secretary of State of Delaware and that provided by Defendants to Osprey. Moreover ¶ 13(e) expressly waived personal service of process.

Defendants' motion to dismiss for improper venue and forum is also DENIED. Under ¶ 13(e) of the December agreement, Osprey has shown that Texas was the proper forum and Harris County the exclusive venue for this action. Even if venue were improper, as noted the lack of proper venue as a matter of law will not support the setting aside of a default judgment. *Rogers*, 167 F.3d at 942.

Finally, Defendants' motion to dismiss for failure to join an indispensable party, FASCON, is also DENIED. The Court agrees with Osprey that FASCON is not an indispensable party or even a required party because J3S sold its rights to collect on the invoices to Osprey.

**SIGNED** at Houston, Texas, this ___9th___ day of ___January___, 2015.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE